**KENTUCKY BAR ASSOCIATION, Complainant,**

v.

**William A. LaBACH, Respondent.**

Supreme Court of Kentucky.

March 14, 1978.

Leslie G. Whitmer, Director, Kentucky Bar Ass'n, Frankfort, for complainant.

William A. LaBach, pro se.

PER CURIAM.

This disciplinary action has arrived here on a recommendation by the bar association's Board of Governors that LaBach be permanently disbarred.

The proceedings against LaBach began on June 8, 1976, with the filing by the bar association of a charge alleging three counts of unethical and unprofessional conduct, each of which revolves around an ongoing dispute between LaBach and another Lexington attorney, David C. Graves. On November 5, 1976, a three-man trial committee considered the charge in a hearing in which LaBach actively participated. The trial committee determined that there was insufficient evidence to support the second count, but sustained the other two counts and recommended that LaBach be publicly reprimanded and suspended from the practice of law for three months. On November 17, 1976, the Board of Governors unanimously found LaBach guilty, apparently of all three counts, with a majority of ten board members recommending total disbarment. Other recommended punishments were one member for a three-year suspension and three members for a one-year suspension.

The charges against LaBach, and our conclusions with respect to each, are as follows:

Count 1 alleges that LaBach removed from Graves' office work product belonging to Graves without his permission. In mid-October of 1975—just a few weeks after LaBach's graduation from law school and while he was still awaiting the results of the summer bar examination—Graves hired LaBach as a law clerk under an agreement whereby LaBach was to receive ten percent of any attorney's fees accepted by Graves in cases on which LaBach had worked. During the next two months, LaBach assisted Graves in several cases, doing research, writing memoranda, and even drafting some motions and pleadings. According to LaBach, some of those cases were settled during this period, generating attorney's fees his portion of which totaled a little over $1,000. All he ever received from Graves, however, was $50.

On October 16, 1975, LaBach became a full-fledged attorney and was admitted to practice in Kentucky. Two days later, following an incident in which Graves lambasted LaBach for counseling one of Graves' clients in his absence, LaBach cleaned out his desk and left Graves' office, taking with him some research material which had not yet been incorporated into Graves' client files. Shortly thereafter, Graves received a letter from LaBach stating that "when and if I am tendered the legal fees owed . . . I will be willing to cooperate in furnishing work product for research done prior to my departure from your office."

Insofar as the merits of this charge are concerned, we must confess that we are somewhat surprised it was ever instituted in the first place. The bar association's entire case with respect to this matter was founded solely upon LaBach's letter to Graves plus some rather vague testimony regarding a shortness in Graves' supply of photocopying paper of some 1,000 sheets. Graves himself admitted that he had no idea "what he took or how much he took." Had it not been for LaBach's own testimony, given after the bar association had closed its case, that he removed from his desk photocopies of eight or ten appellate decisions in which Graves had apparently shown no interest, it is doubtful that the bar association would have been able to

sustain its burden of proof on the charge. As it is, it is our considered opinion that the facts involved are not such as warrant disciplinary action. While we certainly do not intend to deter the bar association from the continuance of—indeed commend it for—its constant vigil to maintain a high level of competence and integrity throughout the legal profession, neither are we in the business of settling private disputes between attorneys.

Count 2 asserts that LaBach pirated clients away from Graves and is based on the fact that soon after LaBach vacated Graves' office, three of Graves' clients discharged him as counsel and eventually hired LaBach to replace him. Because we agree with the trial committee that there was not enough evidence to support this allegation, we similarly hold that it does not justify disciplinary action. The record clearly reveals that all three clients dismissed Graves not as a result of any solicitation on LaBach's part, but rather simply because they were dissatisfied with the manner in which Graves had represented them.

Count 3 is that LaBach made several false and improper statements about Graves in a motion filed with a public agency. Among the clients who discharged Graves in favor of LaBach was one Bobbie Hampton, who at the time she did so had a claim pending before the Workmen's Compensation Board. Upon being notified of his dismissal from the case, Graves promptly filed a motion with the board asking that the defendant, Standard Products Company, be ordered to pay Graves the maximum allowable attorney's fee of $6,500 for work performed by him up to that point. LaBach responded to Graves' motion, purportedly at the insistence of Miss Hampton, with a sworn "Response to Motions Concerning Attorney's Fees," in which he stated, among other things, that: (1) Graves had not negotiated a lump-sum settlement for Miss Hampton in the workmen's compensation case as alleged by Graves in his motion for attorney's fees; (2) Graves had not entered into a contract with Miss Hampton with respect to her workmen's

compensation claim; (3) Graves was not entitled to be paid for the taking of two of the depositions filed in the workmen's compensation case, since they were in fact taken by another attorney; (4) Graves was not entitled to be paid for the taking of various other depositions which, although they were used in the workmen's compensation case, were actually taken for use in, and dealt primarily with the issues in, a related civil action against Standard Products Company; (5) it was LaBach's belief that in any event these latter depositions had never been properly filed with the Workmen's Compensation Board; (6) Graves had attempted to sell copies of these latter depositions to another Lexington attorney; (7) Graves was not entitled to be paid for the taking of 22 affidavits which were actually taken for use in yet another related case—a class action suit against Standard Products Company in which Graves did no work other than taking the affidavits—since Graves had already been paid for this work by the clients in the class action suit; (8) it was LaBach's belief that in any event those affidavits had never been filed with the Workmen's Compensation Board; (9) in August of 1974, Graves had withdrawn from the class action suit without notice to his clients; and (10) as a result of his withdrawal from the class action suit, a "complaint" had been filed against Graves in October of 1974 for defrauding and misrepresenting his clients. LaBach concluded the response by stating that Graves was at most entitled to only $500 for the work he had performed. The response was subsequently stricken from the record by the board as being inappropriate.

It is contended by the bar association that the inclusion by LaBach of the first nine of these statements in his response constituted a violation of the code of professional responsibility in force in this jurisdiction, see RAP 3.130 (now SCR 3.130), for the simple reason that all nine are completely false. We disagree. To begin with, we are not at all convinced after reading the record that statements (1), (4), (5), (7), (8) and (9) are necessarily incorrect, the evidence showing

some to be clearly true and being inconclusive as to the others. And while statements (2), (3) and (6) are plainly false, we are similarly not convinced that LaBach knew them to be so at the time he filed his response, as required by Disciplinary Rule 7–102(A)(4).[1] See also Ethical Consideration 7–26, Code of Professional Responsibility.

We do agree, however, that the tenth statement in LaBach's response was improper. For although we do not believe that this statement violated the requirements of RAP 3.150 (now SCR 3.150), which is designed to prevent disclosure of disciplinary matters by the parties to a disciplinary action, inasmuch as it was in no way relevant to the issue of whether Graves was entitled to attorney's fees in the workmen's compensation case, we do think that the insertion of this statement in the response constituted a direct violation of DR 7–102(A)(1), which provides that:

> In his representation of a client, a lawyer shall not . . . file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

See also EC 7–10 and EC 7–37. For this reason, it is our opinion that LaBach should be, and he is, sternly reprimanded and ordered to pay the costs of this action.

All concur.

---

[1]. DR 7–102(A)(4) provides that "In his representation of a client a lawyer shall not . . . knowingly use perjured testimony or false evidence."